UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS REGER,<br><br>                Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA, N.A.,<br><br>                Defendant. | CASE NO. 2:21-cv-00910-BAT<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

      Defendant Bank of America Corporation (more properly named Bank of America, N.A. ("BANA")),[1] moves to dismiss Plaintiff Thomas Reger's Complaint (Dkt. 1-1) with prejudice. Dkt. 8. Defendant argues that Plaintiff's claim is time-barred and that the Complaint fails to state a claim for relief that is plausible on its face. *Id.*

      Plaintiff, who is proceeding *pro se* in this action, filed no opposition to the motion to dismiss although Defendant served him with a copy of its motion by U.S. Mail and e-mail. Dkt. 8, p. 11. On August 26, 2021, the Court also reminded the parties that the motion to dismiss was noted for September 10, 2021 and that Plaintiff's opposition must be filed by September 7, 2021. Dkt. 12. Plaintiff's failure to file an opposition to the motion may be considered by the Court as an admission that Defendant's motion has merit. LCR 7(b)(2).

---

[1] Plaintiff has named Bank of America Corporation ("BAC") as the defendant. Defendant advises that BANA, not BAC, is the proper defendant in this action because the credit card account was issued by BANA. Although BAC is the ultimate corporate parent of BANA, it is not a bank and does not maintain consumer bank accounts or issue credit cards. Dkt. 8, p. 1, n.1.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 1

Having carefully reviewed Plaintiff's Complaint, Defendant's motion, and balance of the record, the Court grants the motion to dismiss without leave to amend.

PLAINTIFF'S ALLEGATIONS

On or around November 25, 2019, Plaintiff purchased a parcel of land (the Transaction") located in Seattle, Washington (the "Property") from Harris Investments, LLC ("Harris"). Dkt. 1-1, ¶ 6. Plaintiff paid the amount of $8,944.52 for the Property with his Bank of America Visa Credit Card. *Id.*, at ¶ 7. Harris promised to transfer the Property title to Plaintiff "after payment," but failed to deliver title "even after polite emails prodding's[sic] [Harris] to do so. . . ." *Id*. at ¶ 9.

On January 30, 2020, Plaintiff disputed the $8,944.52 charge and BANA credited the disputed amount back to Plaintiff's account. *Id.* at ¶ 10. Plaintiff then "moved on" to another real estate purchase, for which he partially paid using the same BANA credit card. *Id*. at ¶ 11.

On February 28, 2020, after BANA notified Harris of the disputed charge, Harris responded to BANA by sending a fax that included a copy of the recorded deed conveying the Property to Plaintiff. *Id*. at ¶ 12. The Court takes judicial notice of the Special Warranty Deed recorded in the King County Auditor Records (see https://recordsearch.kingcounty.gov/LandmarkWeb), recording date February 27, 2020, File No. 20200227000873. Dkt. 9, Declaration of Jesús Palomares, ¶ 3, Ex. B.

Thereafter, BANA reversed the previously granted credit for the "failed transaction." When it did so, Plaintiff's balance exceeded the credit line by $8,000.00. Dkt. 1-1, ¶ 16. Plaintiff's credit score dropped from 750 to 660, triggering other creditors to close Plaintiff's zero balance accounts, which caused the score to drop below 640. *Id.*, ¶ 17. Plaintiff was then unable "to secure traditional financing for [his replacement real estate] project." *Id*. at ¶ 18.

In March 2021, Plaintiff contacted BANA and requested that it again review the charge. After 90 days, BANA again denied the charge but did not provide Plaintiff with "a detailed reason or status." *Id.*, ¶ 20.

Plaintiff claims that BANA failed to perform a reasonable and timely investigation as is required by the Fair Credit Billing Act ("FCBA") and that BANA's wrongful actions damaged him by (1) causing his credit score to drop; (2) improperly charging interest for the past 18 months; (3) causing Plaintiff to pay higher interest expenses due to his inability to refinance his home; (4) causing embarrassment; (5) causing Plaintiff to pay a $99 annual fee; and (6) causing damages equal to the purchase price of the Property ($8,944.52). Dkt. 1-1, p. 8, ¶¶ 5-6.

## PROCEDURAL BACKGROUND

On or about June 17, 2021, Plaintiff served BANA with copies of unfiled Summons and Plaintiff's Complaint for Damages, Statutory Damages and Injunctive Relief, which were signed by Plaintiff on June 14, 2021. Dkt. 1-1, pp. 2-3; pp. 4-10. The Complaint is captioned to be filed in King Superior Court in King County, Washington. The Summons and Complaint were served on BANA without first being filed with the State Court, which is allowed under CR 4.

On July 7, 2021, BANA filed a Notice of Removal. Dkt. 1.

## DISCUSSION

A.  Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal citations omitted). A plaintiff must plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Further, while the Court must accept the well pled factual allegations in the complaint as true when ruling on a motion to dismiss, the Court "need not accept as true legal conclusions couched as factual allegations," *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678–79), and need not accept "unwarranted inferences," *Rogers v. Cty. of Riverside*, 139 F.3d 907 (9th Cir. 1998) (internal citations omitted).

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). The Court may also examine "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

B.      Statute of Limitations

"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623

F.2d 117, 119 (9th Cir. 1980)).

"To succeed on a claim under 15 U.S.C. § 1666, plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank to issue the card to comply with the procedural requirements of Section 1666." *Cunningham v. Bank One*, 487 F. Supp. 1189, 1192 (W.D. Wash. 2007). Billing error disputes pursuant to the FCBA are governed by a one-year statute of limitations. *See* 15 U.S.C. § 1640(e).

While Plaintiff does not allege when BANA reversed the credit to his account, he knew at the latest, in "March of 2020" that Harris had transferred the title to him – which was what caused BANA to reverse the credit – the action upon which Plaintiff bases his alleged damages (in particular, his inability to secure traditional financing for the second real estate project he had already started prior to March 2020). Thus, Plaintiff's alleged FCBA claim arose sometime in March 2020.[2]

Under Fed. R. Civ. P. 3, a civil action is commenced by filing the complaint. As Plaintiff originally filed this action in King County Superior Court, he did not need to file his complaint before serving it on BANA. *See* CR 3(a) and RCW 4.16.170 (If an action is commenced by service …, the plaintiff must file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations).

Under Plaintiff's timeline then, Plaintiff would have had to serve his State Court Complaint on BANA by March 2021 – the first step required under RCW 4.16.170 to toll the relevant one-year statute. However, Plaintiff did not serve BANA with the unfiled Summons and

---

[2] Plaintiff also alleges that he "again contacted [BANA] in March of 2021 requesting that they again review the charge." Dkt. 1-1, ¶ 20. However, Plaintiff's action accrued when he knew of his damages, which would have been around March 2020 and not March 2021.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 5

1   Complaint until June 17, 2021, three months after the statute of limitations had expired. *See* 15

2   U.S.C. § 1640(e).

3         Thus, amendment would be futile and therefore, Plaintiff's FCBA claims are dismissed

4   with prejudice. In addition to being time barred, the Court concludes that the Complaint fails to

5   state a FCBA claim as a matter of law.

6   C.    <u>Failure to Allege a FCBA Claim</u>

7       1.    <u>Consumer Transaction</u>

8         Plaintiff's action is based on BANA's alleged violation of the billing dispute procedures

9   contained in the FCBA, 15 U.S.C. § 1666, which is part of the Truth In Lending Act ("TILA"),

10  15 U.S.C. § 1601. The FCBA was enacted to help consumers make informed decisions about the

11  use of credit and to protect consumers against unfair and inaccurate credit billing practices.

12  *Cunningham*, 487 F. Supp. 2d at 1191 (citing *GAC Finance Corp. of Spokane v. Burgess*, 16

13  Wash.App. 758, 760, 558 P.2d 1386 (1977)).

14        The FCBA defines a "consumer" credit transaction as "one in which the party to whom

15  the credit is offered or extended is a natural person, and the money, property, or services which

16  are the subject of the transaction are primarily for personal, family, or household purposes." 15

17  U.S.C. § 1602(i). Plaintiff alleges that he used his BANA credit card to purchase the Property but

18  does not allege that the purchase was for a personal, family, or household purpose. Throughout

19  his Complaint, Plaintiff refers to his real estate purchases as "real estate projects" and

20  differentiates them from his "home" *i.e.*, his principal residence. Dkt. 1-1, ¶ 11 ("Plaintiff then

21  'moved on' and made another real estate purchase"); *id.*, ¶ 15 ("Plaintiff had already begun

22  another real estate project in Bremerton, Washington. . . "), *id.*, ¶ 18 ("Plaintiff was just

23  beginning a real estate project when [BANA] damaged his credit and created a barrier for

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 6

Plaintiff to secure traditional financing for the project."), *id.*, Damages Section ¶ 3 ("Plaintiff has been unable to refinance his home").

Additionally, the Court takes judicial notice of the records of the King County Auditor, which show that Plaintiff is the sole governor of an entity called Great Loop Fund, LLC, which is a "Real Property Investment" company doing business in Washington. Dkt. 9, Palomares Decl., ¶ 2, Ex. A. According to the Auditor's records, Great Loop Fund acquired a parcel of land on February 27, 2020, for $7,440.00. *Id.*, Palomares Decl., ¶ 3, Ex. B. This appears to be the Property described in the Complaint. Dkt. 1-1, ¶ 12 (the deed from Harris is dated February 27, 2020).

Plaintiff has not alleged that the disputed Transaction was a consumer credit transaction, *i.e.*, one meant for his personal, family, or household purposes. Instead, the allegations indicate that the Transaction was a business transaction related to Plaintiff's real property investment business – which does not fall within the purview of the FCBA.

    2.    <u>Billing Error</u>

To succeed on a claim under 15 U.S.C. § 1666, plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of Section 1666. *Cunningham*, 487 F. Supp. 2d at 1192 (citing *Beaumont v. Citibank (South Dakota) N.A.*, 2002 WL 483431, at *3 (S.D.N.Y. March 28, 2002)). The FCBA provides a dispute resolution procedure for the "correction of billing errors" on consumer credit statements. *See* 15 U.S.C. § 1666(a); 12 C.F.R. § 226.1 (stating that one purpose of FCBA is to "provide a means for fair and timely resolution of credit billing disputes"); *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 880 (9th Cir. 2011) ("Fair Credit Billing Act seeks to prescribe an orderly procedure for identifying and resolving disputes

between a cardholder and a card issuer as to the amount due at any given time.") (quoting *Gray v. Am. Express Co.*, 743 F.2d 10, 13 (D.C.Cir.1984)).

Section 1666(a) imposes specific requirements for the "time and contents" of the notice of billing error provided by the obligor to a creditor, requiring that the notice (1) identify the obligor's name and account number; (2) indicate the obligor's belief that the account statement contains a "billing error" and the amount of such billing error; and (3) set forth the reasons for the obligor's belief that the statement contains a billing error. 15 U.S.C. § 1666(a)(1)-(3). The obligor must submit the dispute notice within sixty days after receiving the allegedly erroneous statement. *Id*. Section 1666(b) defines "billing error" as any of the following seven items:

1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

3) **A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.**

4) **The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.**

5) A computation error or similar error of an accounting nature of the creditor on a statement.

6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

7) Any other error described in regulations of the Board.

15 U.S.C. § 1666(b) (emphasis added). Upon receiving the written notice described above from the obligor, a creditor must follow the procedures outlined in 15 U.S.C. § 1666(a)(A) and (B),

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 8

which include sending the obligor, within two billing cycles and no later than 90 days, a written correction of the billing error or explanation of why the alleged billing error was not corrected ("Compliance Duties").

Plaintiff has not alleged either the existence of a billing error nor a failure on BANA's part to comply with the procedural requirements of § 1666. Plaintiff alleges that he paid Harris for the Property and Harris promised to transfer him the Property "after payment." Dkt. 1-1, ¶¶ 7-8. Plaintiff acknowledges, as he must, that Harris transferred the Property to him. Plaintiff alleges that the transfer was not timely as the Deed was not recorded until almost a month after Plaintiff disputed the Transaction. However, Plaintiff does not allege that there was any contractual deadline by which Harris was required to transfer the title nor does he allege that he invoked a default, or took any steps to rescind the Transaction. Plaintiff merely alleges that after he filed a dispute of the Transaction charge with BANA, he simply "moved on and made another real estate purchase. . . ." Dkt. 1-1, ¶¶ 10-11.

Plaintiff's allegations also reflect that BANA complied with § 1666. According to Plaintiff, BANA received Plaintiff's dispute on or about January 30, 2020. Dkt. 1-1, ¶ 10. Less than thirty days later, on February 28, 2020, BANA notified Plaintiff of its investigation results (fax from Harris showing the Property transfer) and reversed the provisional credit previously provided to Plaintiff. *Id.*, ¶¶ 14, 16. Thus, BANA complied with its 15 U.S.C. § 1666(a)(A)-(B) obligations by investigating and notifying Plaintiff within two billing cycles.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff's FCBA claim should be dismissed with prejudice as it is time barred. Additionally, Plaintiff's FCBA claim is legally deficient as the Transaction at issue was not a consumer transaction entitled to the protections of

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 9

the FCBA and there are no allegations that BANA failed to comply with its statutory obligations.

Accordingly, it is **ORDERED** that BANA's motion to dismiss (Dkt. 8) is **GRANTED** and Plaintiff's Complaint is **dismissed with prejudice**.

DATED this 20th day of September, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 10